UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ROGER FUSELIER, ET AL.                    CIVIL ACTION


VERSUS                                    NO: 06-4488


SEA BOAT RENTALS, INC., ET                SECTION: "A" (4)
AL.


**ORDER AND REASONS**

Before the Court are a **Motion for Summary Judgment on Contractual Defense, Indemnity, and Insurance Issues (Rec. Doc. 28)** filed by third-party defendant Fluid Crane & Construction, Inc. and a **Motion for Summary Judgment on Third-Party Demand (Rec. Doc. 26)** filed by defendants Sea Boat Rentals, Inc., Wolf, Inc., and Apache Corporation  The motions, set for hearing on August 22, 2007, are before the Court on the briefs without oral argument.  For the reasons that follow Fluid Crane's motion is DENIED and the motion filed by Sea Boat Rentals, Inc., Wolf, Inc., and Apache Corp. is GRANTED.

I.    **BACKGROUND**

This case arises out of personal injuries allegedly sustained by offshore welder, Roger Dale Fuselier.  Fuselier, who was employed by Fluid Crane & Construction, Inc., claims to have tripped on baggage while aboard the M/V SEA BREEZE en route to his work location in Main Pass 296.  Fuselier's work was to be performed aboard a fixed platform owned by defendant Apache

Corporation.  The parties do not dispute that the Apache platform was located on the Outer Continental Shelf and qualifies as a "situs" pursuant to the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1331, <u>et seq.</u>

Fuselier was performing services for Apache pursuant to a Master Service Agreement ("MSA") executed by Apache and Fluid Crane, Fuselier's employer.  The MSA does not specifically mention marine transportation services for transporting Fluid Crane's employees to the Apache worksites.  Apache entered into a Master Time Charter Agreement with defendant Sea Boat Rentals, Inc. to provide the SEA BREEZE for the transportation of Fluid Crane's employees to Apache's offshore platforms.  Defendant Wolf, Inc. owned the vessel.

Plaintiff filed this suit against Sea Boat Rentals, Inc., Wolf, Inc. and Apache seeking recovery for the "severe and permanently disabling" injuries that he allegedly sustained when he tripped on the baggage.  (Comp. ¶ 7).  Apache is providing defense and indemnity to Sea Boat and Wolf pursuant to the indemnity agreement contained in the Sea Boat/Apache Master Time Charter.

Sea Boat Rentals, Inc., Wolf, Inc., and Apache Corporation (collectively "Defendants") filed a third-party demand against Fluid Crane seeking indemnity for Fuselier's claim pursuant to

the indemnity provision contained in the Apache/Fluid Crane MSA. The indemnity agreement requires Fluid Crane to defend and indemnify Apache and its contractors and subcontractors for any claim brought against them by a Fluid Crane employee like Fuselier.

Fluid Crane and Defendants have each filed motions for summary judgment directed at the enforceability of the Apache/Fluid Crane indemnity provision.  Fluid Crane argues that Defendants' third-party demand for indemnity should be dismissed because the Louisiana Oilfield Anti-Indemnity Act ("LOAIA") renders the indemnity provisions (and the concomitant insurance obligations) null and unenforceable.  On the other hand, Defendants argue that the LOAIA does not apply and that the indemnity provisions contained in the Apache/Fluid Crane MSA are enforceable under maritime law.

## II.  DISCUSSION

### A.  *The Parties' Arguments*

Fluid Crane argues that Defendants' third-party demand for indemnity should be dismissed because the Louisiana Oilfield Anti-Indemnity Act ("LOAIA") renders the indemnity provisions (and the concomitant insurance obligations) null and unenforceable.  Fluid Crane argues that the MSA is not a maritime contract both from a historical and factual perspective because

3

the contract was one for "construction and fabrication," and
Fluid Crane's employees were contracted to perform welding work,
specifically the repair of hurricane-damaged platforms.  Fluid
Crane points out that the contract does not mention anything
about a vessel and that no vessels were to be used in Fluid
Crane's work aboard the platforms.  Fluid Crane contends that the
fact that Fuselier's work required him to travel over water does
not transform the MSA into a maritime contract because the nature
of Fuselier's work was primarily fixed platform maintenance and
repair.  Because the MSA is non-maritime and "pertains to a well"
located on the OCS off the coast of Louisiana, Louisiana state
law governs.  Accordingly, the LOAIA applies and nullifies any
indemnity provisions in favor of Apache.

     Defendants argue that the MSA is a mixed contract containing
both non-maritime and maritime obligations.  Even though the
contract did not specifically describe transportation for Fluid
Crane's employees, Defendants argue that it was obviously
necessary given the location of the platforms.  According to
Defendants the maritime obligations are separable from the non-
maritime obligations so maritime law should govern indemnity with
respect to the maritime obligation of transporting Fuselier and
his co-workers.  Moreover, according to Defendants, the LOAIA
cannot apply because Fuselier's injuries did not occur on an

4

OCSLA situs--he was injured in open waters while en route to an OCSLA situs.

Fluid Crane counters that the MSA was not a mixed contract because Fluid Crane did not assume any maritime obligations under the agreement.  Fluid Crane points out that Apache is the party who contracted with Sea Boat for a vessel.  Further, according to Fluid Crane, incidental use of a vessel in the execution of a contract does not transform a non-maritime contract into a maritime contract.

Fluid Crane also retorts that OCSLA applies to the MSA because the contract's principal obligation is welding and fabrication work on a platform permanently affixed to the OCS. Fluid Crane argues that the law governing Fuselier's cause of action, which may very well be maritime law, is not determinative of whether the MSA and its indemnity provisions are subject to maritime law.

### B.   *Law and Analysis*

The Louisiana Oilfield Anti-Indemnity Act provides in relevant part as follows:

> Any provision contained in, collateral to, or affecting an agreement ***pertaining to a well for oil, gas, or water, or drilling for minerals*** which occur in a solid, liquid, gaseous, or other state, ***is void and unenforceable*** to the extent that it purports to or does ***provide for defense or indemnity, or either, to the indemnitee against loss or liability for damages***

> ***arising out of or resulting from death or bodily injury
> to persons***, which is caused by or results from the sole
> or concurrent negligence or fault (strict liability) of
> the indemnitee, or an agent, employee, or an
> independent contractor who is directly responsible to
> the indemnitee.

La. Rev. Stat. Ann. § 9:2780(B) (2005).  The Act arose out of a

concern about the unequal bargaining power of oil companies and

contractors.  Fontenot v. Chevron U.S.A., Inc., 676 So. 2d 557,

563 (La. 1996).  The Act was an attempt to avoid adhesionary

contracts under which smaller contractors would have no choice

but to agree to indemnify the larger oil company lest they risk

losing the contract.  Id.  In contrast, contractual indemnity

agreements such as those found in the MSA are generally

enforceable under maritime law.  Hardy v. Gulf Oil Corp., 949

F.2d 826, 834 (5th Cir. 1992) (citing Amer. Stevedores v.

Porello, 330 U.S. 446 (1947)).

The MSA has no particular nexus to the State of Louisiana--

only one party is a Louisiana company and the contract is not for

services to be rendered in this state.  The MSA contains a choice

of law provision which stipulates that the contract shall be

construed and enforced in accordance with general maritime law--

not Louisiana law.  (Def. Exh. 1 ¶ 21).  Thus, the sole means for

subjecting the MSA to Louisiana law and the LOAIA, is through the

Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1331, et

<u>seq.</u>

The OCSLA provides comprehensive choice-of-law rules and federal regulation to a wide range of activity occurring beyond the territorial waters of the states on the outer continental shelf of the United States. <u>Demette v. Falcon Drilling Co.</u>, 280 F.3d 492, 495 (5th Cir. 2002). Pursuant to the OCSLA, the law to be applied to the OCS is exclusively the federal law of the United States. <u>Rodrique v. Aetna Cas. & Surety Co.</u>, 395 U.S. 352, 356-57, 89 S. Ct. 1835, 1837, 23 L. Ed. 2d 360 (1969). However, because federal law might be inadequate to cope with the full range of potential legal problems arising on the OCS, the Act supplements "gaps" in federal law through the incorporation of the laws of the adjacent state. <u>See id.</u> Under incorporation, the law of the adjacent state is treated as "the law of the United States" but only to the extent that it is "applicable" and "not inconsistent with . . . other Federal laws." <u>Id.</u> (quoting 43 U.S.C. § 1333). Moreover, the OCSLA is a Congressionally mandated choice of law provision which preempts any contrary choice of law provision found either in state law or in the contract at issue. <u>Union Tex. Petr. Corp. v. PLT Eng'r, Inc.</u>, 865 F.2d 1043, 1050 (5th Cir. 1990) (citing <u>Matte v. Zapata Offshore Co.</u>, 784 F.2d 628 (5th Cir. 1986); <u>Wooton v. Pumpkin Air, Inc.</u>, 869 F.2d 848 (5th Cir. 1989)).

The OCSLA does not, however, apply federal law (and state law by incorporation) to every dispute arising on the OCS. Rather, the OCSLA applies only to the "subsoil and seabed" of the OCS and to structures "permanently or temporarily attached to the seabed" for the purpose of exploring for or producing natural resources.  43 U.S.C. § 1333(a)(1).  The Supreme Court and the Fifth Circuit have held that § 1333(a)(1) creates a "situs" requirement for the application of the OCSLA, including § 1333(a)(2)(A) which incorporates the state law of the adjacent state.  Demette, 280 F.3d at 496 (citing Offshore Logistics, Inc. v. Tallentire, 477 U.S. 207 (1986); Mills v. Director, OWCP, 877 F.2d 356 (5th Cir. 1989(en banc)).  Construing §§ 1333(a)(1) and (2)(A) together the Fifth Circuit has articulated a three-part test for determining whether state law governs a controversy arising on the OCS: 1) the controversy must arise on a situs covered by the OCSLA, 2) federal maritime law must not apply of its own force, and 3)the state law must not be inconsistent with federal law.  Demette, 280 F.3d at 497 (citing Union Tex. Petr. Corp. v. PLT Eng'r, 865 F.2d 1043 (5th Cir. 1990)).

Thus, the threshold determination that must be made when determining whether state law governs a controversy arising on the OCS is whether the OCSLA applies.  And the OCSLA only applies if the controversy arises on an OCSLA situs.  The "controversy"

in this case is Fuselier's claim for injuries that he sustained
aboard the SEA BREEZE.  Fuselier was injured on the high seas
while en route to an OCSLA situs.  It is undisputed that Fuselier
did not sustain his injuries on an OCSLA situs.

In Offshore Logistics, supra, the Supreme Court rejected the
contention that the OCSLA covers claims by platform workers who
are injured or killed on the high seas while en route to work on
an OCSLA situs.  477 U.S. at 219.  The Court stressed that it is
the *situs* of the injury that determines the application of OCSLA
and not the *status* of the injured worker.  Id.  Thus, the OCSLA
does not extend to Fuselier's claims for injuries on the high
seas and his claims against Defendants are governed by maritime
law.  And contrary to Fluid Crane's position, this Court is not
convinced that the situs of Fuselier's injury is irrelevant to
the analysis of whether Louisiana law allows Fluid Crane to avoid
its indemnity obligations for this accident.

Neither party cited to the Court, and the Court's own
research failed to uncover, a decision addressing the legal
issues currently before this Court.  Some decisions address the
law that governs the injured worker's claims when he is injured
en route to an OCSLA situs and others address the law that
governs indemnity obligations when the worker is injured on (or
in very close proximity to) the situs.  But the Court found no

9

decision that addresses the question currently before this Court, i.e., *assuming arguendo that a contract is non-maritime in nature*, does the OCSLA apply state law to indemnity obligations contained in a contract for services to be rendered on an OCSLA situs when the injured worker sustains his injuries miles away from the situs?[1]

Although no decision, non-binding or otherwise, provides the Court an analytical roadmap for the appropriate analysis to be used in this case, the decisions that bind this Court unequivocally hold that the OCSLA does not reach controversies that do not arise on an OCSLA situs.  See, e.g., Offshore Logistics, Inc. v. Tallentire, 477 U.S. 207 (1986); Demette v. Falcon Drilling Co., 280 F.3d 492 (5th Cir. 2002).  Even under the unique facts of this case the Court has no basis to ignore that well-settled mandate.  Further, the Court is convinced that the pertinent "controversy" for purposes of determining whether

_____

[1] The Court has reviewed McKee v. Popich Brothers Water Transport, Inc., cited by Fluid Crane, in which a platform worker was injured on the high seas en route to an OCSLA situs.  No. 93-3848, 1994 WL 382633 (E.D. La. July 19, 1994).  In that case Judge Sear concluded that the OCSLA applied to the plaintiff's claim because as a platform worker the LHWCA eliminated the need for any type of status or situs requirement.  Id. at *3.  The Fifth Circuit's decision in Demette, supra, implicitly overrules McKee because the law is now clear that even LHWCA claims must satisfy the OCSLA situs requirement as well as the OCSLA status requirement.  Demette, 280 F.3d at 498; see also Offshore Logistics, Inc., 477 U.S. at 220 n.2.

the situs requirement is met with respect to the indemnity issues
currently before the Court is Fuselier's injury.  And because
Fuselier was injured on the high seas, this "controversy" did not
arise on the OCS.  Consequently, the OCSLA does not apply to
Fluid Crane's indemnity obligations with respect Fuselier's
claim.

　　　Fluid Crane does not argue that the situs requirement is
inapplicable or irrelevant to the Court's analysis but rather
that Fuselier's injury is merely "the underlying tort" in this
litigation and that the "controversy" here for purposes of the
OCSLA situs requirement is the MSA's indemnity clause.  Fluid
Crane contends that Defendants are reaching beyond the scope of
the motions before the Court by relying upon the situs of
Fuselier's injury because the pending motions pertain only to
contractual indemnity and have nothing to do with Fuselier's
personal injury claim.  (Rec. Doc. 45 at 2).

　　　Although the Court has found no cases to directly support
its own analysis here, the Court finds no support whatsoever for
Fluid Crane's attempt to narrowly characterize the instant
indemnity dispute as its own "controversy" for purposes of the
OCSLA situs requirement while completely ignoring the location of
the accident that gave rise to the indemnity dispute in the first
place.  Indemnity disputes are not controversies that arise on

their own but rather by their very nature they are concomitant to a preexisting controversy.  Moreover, even assuming that the indemnity dispute is the pertinent "controversy" here, that dispute did not arise on an OCSLA situs simply by virtue of the fact that the indemnity agreement is contained in a contract whose principal obligation is the rendering of services on an OCSLA situs.  The situs requirement is not automatically satisfied when parties argue over the terms of a contract for services on an OCSLA situs.  See BP Exploration & Prod., Inc. v. Callidus Tech., LLC, No. 02-2318, 2003 WL 193450 (E.D. La. Jan. 27, 2003) (Zainey, J.).  The requisite nexus to the OCSLA situs must still be present and in this case that nexus is completely lacking.[2]

In sum, the controversy in this case did not arise on an OCSLA situs.  The parties stipulated that the MSA would be governed by maritime law and the OCSLA, with its potential

_____

[2] The cases that Fluid Crane cites to the Court do not support its position on the situs issue.  In Smith v. Seacoast Marine, LLC, -- F.3d --, 2007 WL 2192893 (5th Cir. Aug. 1, 2007), the situs requirement was not in question because the plaintiff sustained injuries while being transferred in a personnel basket from the vessel to the platform.  Again in Wagner v. McDermott, Inc., 79 F.3d 20 (5th Cir. 1996), the situs was not in question and the issue in the case was the applicability of § 905(c). Finally, in Pinder v. Chester Henry Boats, No. 90-4010, 1992 WL 73361 (E.D. La. 1992) (Wicker, J.) there is no discussion of the OCS which suggests that the accident occurred on state territorial waters.

incorporation of state law, does not apply here to override that bargained for stipulation.  Because the situs requirement is not met, the nature of the contract as maritime or non-maritime is not relevant to the choice of law determination.   Under maritime law Fluid Crane's indemnity obligation to Defendants for Fuselier's injury is enforceable.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion for Summary Judgment on Contractual Defense, Indemnity, and Insurance Issues (Rec. Doc. 28)** filed by third-party defendant Fluid Crane & Construction, Inc. is **DENIED**;

**IT IS FURTHER ORDERED** that the **Motion for Summary Judgment on Third-Party Demand (Rec. Doc. 26)** filed by defendants Sea Boat Rentals, Inc., Wolf, Inc., and Apache Corp. is **GRANTED.**

September 14, 2007

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE

13